IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **DONELLE WILLIS,** ) | |
| ) | |
| **Plaintiff,** ) | No. 21-cv-1295 |
| ) | |
| v. ) | Judge Jeffrey I. Cummings |
| ) | |
| **THOMAS DART, SHERIFF OF COOK** ) | |
| **COUNTY, CORRECTIONAL** ) | |
| **OFFICER C. CRIBBS,** ) | |
| **COOK COUNTY, ILLINOIS, LT.** ) | |
| **RODRIGUEZ (#752), and SGT.** ) | |
| **GARCIA (#3310),** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Donelle Willis brings this action under 42 U.S.C. §1983 against defendants Sheriff Thomas Dart, Cook County, Illinois, and Cook County Sheriff's Office correctional officers C. Cribbs, Lt. Rodriguez, and Sgt. Garcia, claiming that defendants violated his Fourteenth Amendment rights by failing to protect him at Cook County Jail from another inmate whom they knew posed a risk of imminent harm to others. Specifically, plaintiff alleges that defendants transferred this dangerous inmate into his dormitory tier in the middle of the night without entering the tier to supervise and protect plaintiff from that inmate. The inmate promptly attacked plaintiff (who was sleeping) and seriously injured him by fracturing his jaw.

The individual defendants filed a motion for summary judgment asserting that plaintiff failed to exhaust his administrative remedies before filing this lawsuit as is required by the Prison Litigation Reform Act (PLRA). (Dckt. #91). Plaintiff disagrees. (Dckt. #100). The

1

Court finds that both sides are partially correct, and it grants defendants' motion in part and denies it in part.[1]

**I.      LEGAL STANDARD FOR CONSIDERATION OF SUMMARY JUDGMENT**

Summary judgment is appropriate when the moving party shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A genuine dispute is present if a reasonable jury could return a verdict for the nonmoving party, and a fact is material if it might bear on the outcome of the case." *Wayland v. OSF Healthcare Sys.*, 94 F.4th 654, 657 (7th Cir. 2024); *FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 584 (7th Cir. 2021) (the existence of a factual dispute between the parties will not preclude summary judgment *unless* it is a genuine dispute as to a material fact); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004) (issues of material fact are material if they are outcome determinative).

When the moving party has met that burden, the non-moving party cannot rely on mere conclusions and allegations to create factual issues. *Balderston v. Fairbanks Morse Engine Div. of Coltec Indus.*, 328 F.3d 309, 320 (7th Cir. 2003). Instead, it must "marshal and present the court with the evidence [it] contends will prove [its] case." *Goodman v. Nat. Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010); *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704 (7th Cir. 2009). Courts do not weigh the evidence or resolve conflicts in the record in a summary judgment proceeding; instead, they review the evidence presented in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *NES Rental Holdings, Inc.*

---

[1] In addition to its motion, defendants filed a supporting memorandum, (Dckt. #93), and a Rule 56.1 statement of undisputed material facts, (Dckt. #92 ("DSOF")); plaintiff filed an opposing memorandum, (Dckt. #100), his Rule 56.1(b)(3)(C) statement of additional material facts, (Dckt #97 ("PSOF")), and his response to the DSOF ("Resp. to DSOF"), (Dckt. #96); and defendants filed their reply, (Dckt. #101), and an accompanying response to the PSOF ("Resp. to PSOF"), (Dckt. #102).

2

*v. Steine Cold Storage, Inc.*, 714 F.3d 449, 452 (7th Cir. 2013). Evidence considered on a summary judgment motion "need not be admissible in form, but must be admissible in content, such that, for instance, affidavits may be considered if the substitution of oral testimony for the affidavit statements would make the evidence admissible at trial." *Wheatley v. Factory Card & Party Outlet*, 826 F.3d 412, 420 (7th Cir. 2016).

Summary judgment is only granted if "no reasonable trier of fact could find in favor of the non-moving party." *Hoppe v. Lewis Univ.*, 692 F.3d 833, 838 (7th Cir. 2012) (quotations and citation omitted).

## II.   FACTUAL RECORD

The facts, construed in the light most favorable to plaintiff, are as follows:

### A. Plaintiff Was Attacked in His Sleep By Another Inmate on September 15, 2020.

On August 11, 2020, plaintiff was booked into the Cook County Department of Corrections ("CCDOC") in pre-trial detention. DSOF ¶1. As of September 14, 2020, plaintiff resided in Tier 4G, a jail dormitory with other inmates. DSOF ¶7. In the overnight hours of September 14, and early morning hours of September 15, 2020, when the events underlying this suit occurred, defendant Cribbs was the officer assigned to oversee Tier 4G under the supervision of defendants Rodriguez and Garcia. DSOF ¶¶8, 10; PSOF ¶¶5, 8.

Marshawn Fulton ("Fulton") was also detained at CCDOC on September 14 and 15, 2020. PSOF ¶¶2–3. Fulton was classified by the CCDOC with a "staff assault" alert and given an orange ID meant to notify CCDOC staff that Fulton had prior violent outbursts. PSOF ¶1. At about 12:49 a.m. on September 15, 2020, Fulton started a fight with an inmate on Tier 3D when he knew the assigned correctional officer was not present. PSOF ¶¶3–4. After the fight, Fulton was transferred by Garcia and Rodriguez to Tier 4G, plaintiff's tier. PSOF ¶8. Cribbs, as Tier

4G supervisor, received Fulton as a new transfer. PSOF ¶8. During his transfer, Fulton told both Cribbs and Rodriguez that he was refusing housing and would hurt someone if placed into Tier 4G. PSOF ¶7.

At about 3:25 a.m. on September 15, 2020, Fulton was placed into Tier 4G, where he proceeded to make good on his threats when he approached plaintiff – asleep in his bunk – and delivered multiple closed hand strikes to his face. PSOF ¶¶9–11. According to plaintiff, he was barely conscious during the event and remembers only "being cuffed to a bench after they dragged [him] out." PSOF ¶10. Indeed, plaintiff gave an initial statement that he "was sleeping and got attacked. That's all I know." PSOF ¶11.

### B. The CCDOC Grievance Process

CCDOC inmates are informed of the jail's grievance process when they receive an Inmate Handbook ("Handbook") during intake to the jail and by the face of the Inmate Grievance Form they use to submit grievances. DSOF ¶¶12–13. The Handbook informs inmates that they must "fill out a [grievance form] within 15 days of the incident, problem or event that [they] are grieving" in order to file a grievance. PSOF ¶38. Per the Handbook, inmates must provide the specific date, location, and time of the incident, and problem or event that is being grieved. DSOF ¶17. The grievance form itself contains four individual boxes where inmates can write the date, time, and location of the incident, as well as name and/or identifiers of the accused, as well as a larger fifth box for a brief narrative. DSOF ¶15. It is the inmate's responsibility to correctly fill out the form. DSOF ¶14.

Once all form criteria are met, the grievance is assigned a control number. PSOF ¶39; Resp. to DSOF ¶12. CCDOC officials respond to inmate grievances via an "Inmate Grievance Response/Appeal Form," split into two sections: (1) the response by the CCDOC staff member

4

handling the inmate's grievance, and (2) a section for an inmate to request an appeal of CCDOC's response. DSOF ¶29. If dissatisfied with CCDOC's grievance response, inmates must use this form to appeal the response within fifteen days of receipt. DSOF ¶29. Inmates exhaust the available administrative remedies for that grievance when they appeal via this form. DSOF ¶29.

### C. Plaintiff Engaged in the CCDOC Grievance Process

On September 20, 2020, plaintiff filled out two separate grievance forms and submitted them to Correctional Rehabilitation Worker ("CRW") Darius Wilson. PSOF ¶¶12–13. After consulting with a supervisor, CRW Wilson consolidated the two forms into a single emergency grievance ("Grievance") because the incident involved a fight. PSOF ¶¶13, 15. Plaintiff's Grievance stated:

> On Monday 14, 2020 roughly around 1 am in the morning the guard let a transfer that was having issues with mental health come onto the tier unsupervised, where he walked to my bed and began punching me in my sleep. They took us off the tier [and] made me go to the nurse, where they bandaged me up. Then they made me carry my own bed and made me sleep on the floor when I should have went to the doctor and they never asked me if I wanted to press charges and then later that morning they moved me to another tier. I suffered in severe pain until finally [there was a] shift change and they sent me to the nurse and then to the hospital I have a broken jaw and then finally got back [to another tier] where I slept without a mattress for 2 days.
>
> I want to press charges on the inmate that assaulted me. I was never given the opportunity to I was told by the white shirt that I would be able to. But never been seen by investigator.

DSOF ¶19 (cleaned up); (Dckt. #92-2 at 1-2 (Grievance)). CRW Wilson filled in the information about the date the incident occurred and the location of the incident on the Grievance. Resp. to DSOF ¶¶21, 23. Plaintiff did not fill in the box on the Grievance indicating the individual names of the accused wrongdoers. DSOF ¶¶24-26. Plaintiff's Grievance was assigned Control Number 202012293. DSOF ¶¶18, 19.

5

Then-Lieutenant Roxane Boutte was responsible for responding to plaintiff's Grievance and it was her practice to first look for an incident report to see whether the subject of a grievance was documented. PSOF ¶34. An incident report regarding Fulton's attack on plaintiff was prepared and it states the names of the officers on duty when Fulton was transferred to Tier 4G. PSOF ¶36. The incident report states as follows in the box for a "statement of facts (narrative)":

> On 15 Sep 20 R/O Cribbs . . . was assigned to tier 4G in RTUT for the 2100-0600 shift. At approximately 0325hrs, R/O received inmate Fulton, Marshawn . . . as a transfer to the tier. Detainee Fulton entered the tier and placed his mattress on the bunk and proceeded to use the restroom. Once Detainee Fulton exited the bathroom he went over to Detainee Willis, Donelle . . . who was sleeping on his bunk and proceeded to deliver multiple closed hand strikes to his face. R/O gave several verbal orders to stop fighting and called a 10-10 (Inmate Fight) over the radio. Detainee Fulton came up to R/O and placed his hands on his back. Detainee Fulton was secured by Ofc. Miranda . . . and escorted out of the tier.

(Dckt. #97-6). Boutte would have reviewed this incident report when she responded to plaintiff's Grievance. PSOF ¶35.

Plaintiff received a response to his grievance on October 14, 2020. DSOF ¶29. He timely appealed, stating that "[t]he officer knew that the inmate was known for fighting and left the tear unsupervised." PSOF ¶27 (verbatim). John Mueller, the CCDOC's Director of Individual in Custody Services, denied plaintiff's appeal on October 30, 2020, with the stated rationale that he was "unable to substantiate inmate allegations." (Dckt. #92-2 at 5); DSOF ¶29.

On March 8, 2021, plaintiff filed his complaint for compensatory and punitive damages against defendant Cribbs, Sheriff Dart, and Cook County, (Dckt. #1), before adding defendants Garcia and Rodriguez in his amended complaint on June 4, 2021, (Dckt. #24).

### III. DISCUSSION

In his amended complaint, plaintiff alleges that defendants Cribbs, Garcia, and Rodriguez violated his Fourteenth Amendment rights when they failed to protect him from harm. (Dckt. #24 at 6–12). Specifically, plaintiff alleges that each defendant effectuated Fulton's transfer into plaintiff's tier hours after he attacked another inmate thereby knowingly exposing plaintiff to a substantial risk of harm. As to Cribbs, plaintiff alleges that on September 15, 2020, Cribbs opened the door to Tier 4G, directed Fulton to a bed, closed the door, and left the tier unsupervised after Fulton entered while almost all inmates assigned to the tier were asleep. (*Id*. ¶¶21–31). As to Rodriguez and Garcia, plaintiff claims that each acted unreasonably when they approved Fulton's transfer to plaintiff's tier on September 15, 2020. (*Id*. ¶¶32–55).

Cribbs, Garcia, and Rodriguez seek summary judgment based on their argument that plaintiff has failed to exhaust his administrative remedies. In particular, defendants assert that plaintiff did not name or otherwise identify defendants Cribbs, Rodriguez, or Garcia in his grievance and therefore did not place CCDOC officials on notice of his claims against them. (Dckt. #93 at 4–7). Defendants further assert that plaintiff's claims against Rodriquez and Garcia must be dismissed for the additional reason that his Grievance does not provide notice of the claims he alleges against them in this lawsuit. (Dckt. #93 at 7–9).

#### A. The PLRA Requires Exhaustion.

The PLRA "requires prisoners to exhaust administrative remedies before filing a federal claim about prison conditions." *Crouch v. Brown*, 27 F.4th 1315, 1320 (7th Cir. 2022); *see* 42 U.S.C. §1997e(a)). The Seventh Circuit "take[s] a strict compliance approach to exhaustion," which requires prisoners to take each of the steps prescribed by each jail or institution's regulations. *Williams v. Rajoli*, 44 F.4th 1041, 1045 (7th Cir. 2022), *quoting Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006); *Chambers v. Sood*, 956 F.3d 979, 983 (7th Cir. 2020). "The

7

primary justification for requiring prisoners to exhaust administrative remedies is to give the prison an opportunity to address the problem *before* burdensome litigation is filed." *Chambers*, 956 F.3d at 983 (emphasis in original) (citing cases). To achieve this goal, "the grievance must raise the same claim as the lawsuit *and* provide enough information to indicate that the defendant is the target." *Brown v. Briggs*, No. 22-1963, 2023 WL 3674669, at *2 (7th Cir. May 26, 2023) (emphasis added) (citing *King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023) and *Bowers v. Dart*, 1 F.4th 513, 517-18 (7th Cir. 2021)). "Exhaustion is an affirmative defense with the burden of proof on the defendants." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011) (citing *Jones v. Bock*, 549 U.S. 199, 212 (2007)).

### B. The Grievance Provided Sufficient Notice That Officer Cribbs Is the Target of The Claim Alleged in Plaintiff's Lawsuit.

Defendants do not dispute that the Grievance sufficiently provides notice of the claim that plaintiff alleges against Cribbs in this lawsuit. Defendants do, however, contend that the Grievance fails to provide sufficient information that Cribbs was the accused "guard" because: (1) plaintiff did not fill out the grievance form's box requiring him to list the name or identity of the accused; and (2) "the rest of the grievance does not provide sufficient context as to who this guard might be because it provides the *wrong date and time* for the incident." (Dckt. #93 at 5, 6) (emphasis in original). The Court disagrees for the following reasons.

First, although the inmate grievance form contained a box in which plaintiff could name or identify his wrongdoer, neither the Handbook[2] nor Seventh Circuit caselaw requires that a grievance explicitly name the person accused of wrongdoing so long as the grievance provides prison officials with sufficient information to determine who was responsible for the action or

---

[2] Defendants do not dispute plaintiff's assertion that the Handbook does not require that a grievance explicitly name the accused; instead, they urge the Court to disregard this fact. (Dckt. #101 at 4).

8

decision challenged by the grievance. *See, e.g.*, *Maddox*, 655 F.3d at 722 (plaintiff's failure to "specifically name the defendants in the grievance was a mere technical defect that had no effect on the process" where it "belie[d] reason to suggest that prison administrators . . . were unaware of who was responsible for th[e] decision" under challenge); *German v. Stewart*, No. 3:22-CV-1352-SMY, 2024 WL 1093727, at *3–4 (S.D.Ill. Mar. 13, 2024) (plaintiff's "technical error" in failing to identify defendants by name in his grievance was "of no consequence" where his grievance provided sufficient detail to identify defendants with his medical records); *Gibson v. Wexford Health Sources, Inc.*, Case No. 3:22-cv-50281, 2023 WL 9316119, at *3–4 (N.D.Ill. Oct. 20, 2023) (plaintiff properly exhausted claims despite his failure to name defendant doctor where prison officials certainly knew that the doctor was involved in plaintiff's medical care following the incident in question); *Bratcher v. Nicholson*, No. 19 C 8190, 2023 WL 2539032, at *4–5 (N.D.Ill. Mar. 16, 2023) (where a grievance does not name the accused, it "must provide enough information to identify the actors involved" and finding that grievance "provided detail allowing prison officials to identify the conduct at issue and determine which staff members allegedly failed to protect [plaintiff] from his cellmate."); *Bakaturski v. Brookhart*, No. 21-cv-00014-GCS, 2022 WL 1093633, at *3–4 (S.D.Ill. Apr. 12, 2022) (prisoner properly exhausted claims because details in grievances against "healthcare" and "head of medical" were sufficient for prison officials to identify defendants).

In this case, the undisputed facts show that plaintiff's Grievance – by referencing the "guard" who let a transferred inmate with mental health issue onto his tier – provided sufficient information to enable the CCDOC officials to determine that Cribbs was the "guard" in question. In particular, Lt. Boutte, who was tasked with responding to the Grievance, followed her practice of looking for an incident report documenting the subject of the Grievance. Boutte successfully

9

located the incident report concerning Fulton's assault of plaintiff notwithstanding the fact that the Grievance (as noted by defendants) contained inaccurate information regarding the date and time of the assault. That incident report, (Dckt. #97-6), clearly identified Cribbs as the officer assigned to Tier 4G (plaintiff's tier) during the time in question and stated that he received Fulton as a transfer to the tier during his shift.[3]

Furthermore, the CCDOC never sought any further details or asked for clarification from plaintiff. Instead, Boutte responded to plaintiff's Grievance and Director Mueller denied plaintiff's appeal on the merits with the statement that he was "unable to substantiate [plaintiff's] allegations" that the officer (Cribbs) knew the inmate was known for fighting and left the tier unsupervised. *See, e.g.*, *Maddox*, 655 F.3d at 722 ("Where prison officials address an inmate's grievance on the merits without rejecting it on procedural grounds, the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."); *Daval v. Zahtz*, No. 19 C 50147, 2021 WL 2072127, at *5 (N.D.Ill. May 24, 2021) (plaintiff exhausted administrative remedies where "no prison official ever told [him] that he needed to provide more detail, nor did they need him to provide more detail" because prison officials addressed his grievance "without the need for further information"); *Gibson*, 2023 WL 9316119, at *4 (same).

In sum: the undisputed facts show that plaintiff's Grievance provided the CCDOC with sufficient information to identify Cribbs as the "guard" referenced by plaintiff and to investigate plaintiff's allegations against him.[4] Plaintiff therefore properly exhausted his administrative

---

[3] Tellingly, in contrast with their approach to Garcia and Rodriquez, defendants do not assert in their Rule 56.1(a) statement that plaintiff's Grievance failed to identify Cribbs "by description." *Cf.* DSOF ¶¶25–26 (asserting that the Grievance did not identify Garcia and Rodriquez by name or by description).

[4] Defendants' reliance on *King v. Dart*, *supra*, is misplaced because the facts in that case are distinguishable. In *King*, plaintiff's claim against an officer (Szul) for delayed medical care was

10

remedies with respect to his claim against Cribbs and defendants' motion for summary judgment with respect to this claim must be denied.

### C. The Grievance Failed to Provide Notice of The Claims That Plaintiff Brings Against Lt. Rodriguez and Sgt. Garcia in This Lawsuit.

Plaintiff claims that Lt. Rodriguez and Sgt. Garcia are liable for failing to protect him because they were on duty on the night he was attacked and they knew of Fulton's violent history and the danger he posed yet nevertheless approved his transfer into Tier 4G. (Dckt. #24, ¶¶32-55). Defendants seek summary judgment on the claims alleged against Rodriquez and Garcia on the ground that plaintiff failed to exhaust his administrative remedies because his Grievance makes no reference to the claims against them. The Court agrees.

It is well-settled that a grievance must contain sufficient facts to "alert[ ] the prison to the nature of the wrong for which redress is sought." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). In other words, the allegations in the grievance must "support the claim [plaintiff] pursued in [his] lawsuit . . . [in order to] give the jail notice of his claim." *King*, 63 F.4th at 608; *Bowers*, 1 F.4th at 518-19; *see also Schillinger v. Kiley*, 954 F.3d 990, 994–95 (7th Cir. 2020) (a prisoner provides insufficient notice when his grievance fails to "place the[] officers at the scene of the attack."). Where defendants show that there is a "disconnect between the grievance and complaint," a plaintiff's claim must be dismissed for failure to exhaust administrative remedies. *King*, 63 F.4th at 608; *Bowers*, 1 F.4th at 518–19.

Just such a disconnect exists here between plaintiff's failure to protect claim against Garcia and Rodriguez in his complaint and the allegations in his Grievance. To reiterate, the

---

dismissed for failure to exhaust his grievance where "the grievance explicitly states that it was the medical staff, not the correctional officers who were responsible for his injuries" and the grievance provided insufficient information to determine that Szul was the accused even if it had alleged that some correctional officer was responsible. *King*, 63 F.4th at 608.

11

Grievance alleges that "the guard" (singular) let Fulton onto Tier 4G prior to his attack but fails to mention that any other staff played a role in Fulton's transfer. DSOF ¶19; *Schillinger*, 954 F.3d at 994–95. Instead, plaintiff's only allegations of wrongdoing arguably concerning a "white shirt" (e.g., supervisor) arose *after* Fulton's attack: namely, that "they" took plaintiff off his tier for medical attention, made him carry his own bed and sleep on the floor, and they never gave him the opportunity to press charges against Fulton even though he was told by a "white shirt" that he would be able to. (Dckt. #92-2 at 1–2). These vague assertions, which neither name nor otherwise identify Garcia or Rodriguez, fail to state facts that would have placed the CCDOC on notice of plaintiff's claim that *they* failed to protect him from harm. *See Hawthorne v. Dahnert*, 21-cv-574-wmc, 2023 WL 7182948, at *2 (N.D.Ill. Nov. 1, 2023) (general and vague accusations in plaintiff's grievance of staff response in *aftermath* of an incident fail to provide jail of notice of failure to protect claims arising *before* the incident).

      As such, the allegations plaintiff makes in his complaint that supervisors Garcia and Rodriguez failed to protect him from harm are "disconnected" from the allegation in his grievance that a sole guard (*i.e.*, Cribbs) let Fulton onto Tier 4G unsupervised. *King*, 63 F.4th at 608; *Bowers*, 1 F.4th at 508; *Schillinger*, 954 F.3d at 994–95. Plaintiff therefore provided insufficient notice of his claims against Rodriguez and Garcia. Accordingly, the Court grants defendants' motion for summary judgment as to Rodriguez and Garcia and dismiss plaintiff's claims against them without prejudice. *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (dismissal for failure to exhaust is without prejudice); *see also McHale v. McDonough*, 41 F.4th 866, 872 (7th Cir. 2022).

## CONCLUSION

For all of the above reasons, the motion for summary judgment, (Dckt. #91), is denied as to defendant Cribbs and granted as to defendants Garcia and Rodriguez. The claims against Rodriguez and Cribbs are dismissed without prejudice. The stay of merits discovery, (Dckt. #87), is lifted and the parties are instructed to file a joint status report with a proposed schedule for the completion of such discovery on or before June 17, 2024.

**Date: June 7, 2024**

**Jeffrey I. Cummings**
**United States District Court Judge**